UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTHONY DIVALENTINO<br>Plaintiff,<br>-against-<br>SUPT. MICHAEL MILLER,<br>Defendant. | **ORDER ADOPTING REPORT AND RECOMMENDATION**<br><br>21-CV-04534 (PMH) |

PHILIP M. HALPERN, United States District Judge:

Anthony DiValentino ("Petitioner"), in a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2, "Petition"), challenges the judgment of the New York State County Court, Orange County, convicting him of attempted assault in the first degree, intimidating a victim or witness in the second degree, criminal mischief in the second degree, aggravated criminal contempt, criminal contempt in the first degree, conspiracy in the second degree, and criminal solicitation in the second degree. (Petition ¶¶ 1, 5). Petitioner also moves to amend his Petition. (Doc. 25).

The Honorable Andrew E. Krause, on June 16, 2026, issued a Report and Recommendation recommending that the Petition and motion to amend be denied. (Doc. 34, "Report" or "R&R"). Petitioner filed objections to the Report on August 27, 2026. (Doc. 37, "Objections"). Respondent filed a letter opposing the Objections on August 27, 2026. (Doc. 38).

For the reasons stated below, Petitioner's Objections to the Report are overruled and the Court adopts the Report in full.

## BACKGROUND

Petitioner was charged by indictment dated June 21, 2010 in the Orange County Court with: (1) attempted murder in the second degree; (2) attempted assault in the first degree; (3) reckless endangerment in the first degree; (4) three counts of intimidating a witness in the second

degree; (5) criminal mischief in the second degree; (6) aggravated criminal contempt; and (7) criminal contempt in the first degree. (Resp. Ex. 1, Doc. 15-1 at 1-4).[1] The incident giving rise to the charges in this indictment occurred on the morning of June 14, 2010 on Interstate 84 in the Town of Greenville, New York. (Doc. 14, "Resp. Aff." ¶ 2). Petitioner hit the vehicle of his ex-girlfriend, Ann Marie Andrews, twice from behind with his vehicle, causing Ms. Andrews' vehicle to veer off the highway and crash into a row of trees, injuring her teeth and her hand. (*Id.*). Ms. Andrews' teeth required surgical repair and her car was totaled. (*Id.*). At the time of the incident, there was an order of protection against Petitioner in favor of Ms. Andrews issued by the Monroe County Court in Pennsylvania. (*Id.*). Petitioner fled the scene after the incident, and was arrested the following day in the City of Newburgh, New York. (*Id.*). Petitioner, on June 22, 2010, pled not guilty to the charges in the June 21, 2010 indictment. (*Id.*).

Petitioner was held in the Orange County Jail while awaiting trial. (*Id.* ¶ 3). Petitioner, in the Orange County Jail, informed another inmate, Joseph Ferrigno, that he wanted to have Ms. Andrews killed to prevent her from testifying at trial. (*Id.*). Mr. Ferrigno reported Petitioner's statements to the Orange County Sheriff's Office. (*Id.*). As a result, Petitioner was charged by indictment dated February 10, 2011 with two charges of conspiracy in the second degree and two counts of criminal solicitation in the second degree. (Resp. Ex. 2, Doc. 15-1 at 7-12). Petitioner pled not guilty to the conspiracy and solicitation charges in this second indictment on February 14, 2011. (Resp. Aff. ¶ 3). The two indictments against Petitioner were consolidated on February 14, 2011. (Resp. Ex. 3, Doc. 15-1 at 15).

---

[1] Citations to "Resp. Ex. _" refer to the exhibits annexed to Respondent's Memorandum of Law in opposition to the Petition. (Docs. 15-1 through 15-9). Citations to specific page numbers of filings on the docket correspond to the pagination generated by ECF.

Petitioner pled guilty to attempted murder in the second degree and conspiracy in the second degree on June 30, 2011. (Resp. Aff. ¶ 4). Petitioner was sentenced on August 17, 2011 to an indeterminate term of imprisonment of fifteen years along with five years of post-release supervision and a consecutive indeterminate term of imprisonment of three to twelve years. (*Id.*). Petitioner appealed, and the Appellate Division reversed his convictions on September 25, 2013 because the trial court "failed to advise [Petitioner] that [his] sentence would include a period of postrelease supervision" during Petitioner's plea proceedings and, thus, Petitioner's plea was not "entered knowingly, voluntarily, and intelligently." *People v. DiValentino*, 971 N.Y.S.2d 342, 344 (App. Div. 2013).

Petitioner, following the vacatur of his guilty plea, was tried by jury on February 27, 2015. (Resp. Aff. ¶ 5). The witnesses at trial included Ms. Andrews, Mr. Ferrigno, officers of the New York State Police, witnesses to the June 14, 2010 incident, Petitioner's sisters—Ruth Ann Hayden and Donna DiValentino—Dr. Donald B. Hoffman, a defense expert and forensic toxicologist, and Dr. Kevin Smith, a prosecution expert and forensic psychiatrist, among other witnesses. (*See* Doc. 16). Following an eleven-day jury trial, Petitioner was convicted of attempted assault in the first degree, three counts of intimidating a victim or witness in the second degree, criminal mischief in the second degree, aggravated criminal contempt, criminal contempt in the first degree, conspiracy in the second degree, and criminal solicitation in the second degree, but acquitted of attempted murder in the second degree. (Resp. Aff. ¶ 5). The jury was instructed only to consider the reckless endangerment charge if Petitioner was found not guilty of attempted murder and attempted assault. (*Id.* ¶ 5 n.2). Thus, the jury did not consider Petitioner's reckless endangerment charge, as Petitioner was convicted of attempted assault in the second degree. (*Id.*). The second conspiracy and criminal solicitation charges were dismissed prior to charging the jury. (*Id.*).

Petitioner was sentenced on March 30, 2015, to a determinate term of imprisonment of fifteen years to be followed by five years of post-release supervision and a concurrent indeterminate term of imprisonment of two and one-third to seven years for his convictions for intimidating a victim or witness, criminal mischief in the second degree, and aggravated criminal contempt, and a concurrent indeterminate term of imprisonment of one and one-third to four years for criminal contempt in the first degree. (*Id.* ¶ 5). Petitioner was also sentenced to concurrent indeterminate terms of imprisonment of six to twenty years and two and one-third to seven years for conspiracy in the second degree and criminal solicitation in the second degree, to run consecutive to his other sentences. (*Id.*). Petitioner's total aggregate sentence was for a period of eighteen years and ten months to twenty-seven years. (*Id.*).

Petitioner filed a notice of appeal, which the Appellate Division determined was untimely. (*Id.* ¶ 6). The Appellate Division, however, calendared a motion to permit Petitioner to file a late notice of appeal. (*Id.*). Petitioner also moved for poor person relief and for the assignment of appellate counsel. (*Id.*). The Appellate Division granted Petitioner's motion to prosecute the appeal as a poor person, assigned him appellate counsel, and granted his motion for leave to file a late notice of appeal in an order dated September 30, 2015. (Resp. Ex. 8, Doc. 15-2 at 3-5).

Petitioner also moved in the County Court to vacate the judgment pursuant to CPL § 440.10 on August 7, 2015, arguing that the government did not timely turn over *Rosario* material consisting of videotapes of Petitioner's conversations with Mr. Ferrigno, the inmate-informant. (Resp. Ex. 5, Doc. 15-1 at 24-28). The Orange County Court denied Petitioner's CPL § 440.10 motion on March 18, 2016, finding that the government provided Petitioner's counsel with "all of the discoverable material" in early 2011 before Petitioner's guilty plea. (Resp. Ex. 9, Doc. 15-2 at 6-12). The Orange County Court also characterized Petitioner's motion as "frivolous." (*Id.* at 11).

Petitioner moved for reconsideration of the Orange County Court's decision denying his Section 440.10 motion. (Resp. Ex. 10, Doc. 15-2 at 13-16). The Orange County Court denied Petitioner's motion for reconsideration on June 6, 2016. (Resp. Ex. 12, Doc. 15-3 at 2-4).

Petitioner, on direct appeal, argued that the evidence at trial was legally insufficient to convict him, his convictions were against the weight of the evidence even if there was legally sufficient evidence to convict him, the prosecutor engaged in misconduct, he was denied effective assistance of counsel, and his sentence was excessive. (Resp. Ex. 13, Doc. 15-3 at 6-56). The Appellate Division affirmed Petitioner's convictions on October 18, 2017. *People v. DiValentino*, 62 N.Y.S.3d 488, 488 (App. Div. 2017). The Appellate Division found that Petitioner's arguments that his convictions "were not supported by legally sufficient evidence" and "he was deprived of a fair trial" due to prosecutorial misconduct were not preserved for appellate review and, regardless, were without merit. *Id.* at 488-89. The Appellate Division also found that "defense counsel provided [Petitioner] meaningful representation" and "[t]he sentence imposed was not excessive." *Id.* at 489. The New York Court of Appeals denied Petitioner's request for leave to appeal on January 4, 2018. *See People v. DiValentino*, 101 N.E.3d 389 (N.Y. 2018).

Petitioner filed a *coram nobis* petition on July 6, 2018 in the Appellate Division, Second Department, arguing that his appellate counsel was ineffective for failing to argue that the trial judge erred by including his attempted assault in the first degree count as a lesser included offense of his attempted murder in the second degree count. (Resp. Ex. 23, Doc. 15-5 at 57-70). The Appellate Division denied the *coram nobis* petition on November 7, 2018. (Resp. Ex. 26, Doc. 15-6 at 6). Petitioner sought leave to appeal to the New York Court of Appeals (Resp Ex. 27, Doc. 15-6 at 7-10), and such leave was denied on March 12, 2019 (Resp. Ex. 30, Doc. 15-6 at 14).

Petitioner filed a second CPL § 440.10 motion on June 26, 2019, arguing that he was actually innocent, that the prosecutor procured his conviction through "duress, misrepresentation and fraud" and engaged in "improper and prejudicial conduct" during his trial, and violations of the New York State Constitution and United States Constitution. (Resp. Ex. 31, Doc. 15-6 at 15-18). The Orange County Court denied Petitioner's second § 440.10 motion on July 26, 2019. (Resp. Ex. 33, Doc. 15-6 at 29-30). Petitioner sought reargument on September 3, 2019 (Resp. Ex. 34, Doc. 15-6 at 31-36), and the County Court denied leave to reargue on October 7, 2019 (Resp. Ex. 37, Doc. 15-6 at 49-50). Petitioner sought leave to appeal the denial of his Section 440.10 motion to the Appellate Division on September 10, 2019 (Resp. Ex. 39, Doc. 15-6 at 52-62), and the Appellate Division denied such leave on February 6, 2020 (Resp. Ex. 42, Doc. 15-6 at 76). Petitioner sought reargument of his motion for leave to appeal the denial of his Section 440.10 motion (Resp. Ex. 43, Doc. 15-6 at 77-82), and reargument of that motion was denied on June 12, 2020 (Resp. Ex. 45, Doc. 15-6 at 97).

Petitioner, following the denial of his second CPL § 440.10 motion, filed a second *coram nobis* petition on July 30, 2020 in the Appellate Division, arguing that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for not arguing that there was an absence of an agreement to support a conspiracy charge, not seeking a *Cardona* or *Massiah* hearing to exclude all evidence obtained from Mr. Ferrigno,[2] not opposing the trial court's

[2] "A *Cardona* hearing is the functional equivalent of a *Massiah* hearing, during which the court determines, pursuant to *Massiah v. United States*, 377 U.S. 201 (1964), whether one's Sixth Amendment right to counsel has been violated because a private individual acting as a government agent deliberately elicited incriminating statements from an accused defendant in the absence of counsel." *United States v. Barret*, 824 F. Supp. 2d 419, 450 n.26 (E.D.N.Y. 2011) (citing *United States v. Miller*, 116 F.3d 641, 665 (2d Cir. 1997)). "*Cardona* hearings are used in New York State criminal proceedings, whereas the proper term is '*Massiah* hearing' in federal court." *Id.* (citing *Fox v. Bezio*, No. 10-CV-02986, 2011 WL 837158, at *3 n.5 (E.D.N.Y. Mar. 7, 2011)).

"vindictive sentencing," and not cross-examining a prosecution witness about his criminal history. (Resp. Ex. 46, Doc. 15-7 at 2-72). The Appellate Division denied Petitioner's second *coram nobis* petition on December 30, 2020, finding that he had "failed to establish that he was denied the effective assistance of appellate counsel." (Resp. Ex. 52, Doc. 15-11 at 30). Petitioner sought leave to appeal to the Court of Appeals (Resp. Ex. 53, Doc. 15-12 at 2-7), and the Court of Appeals denied leave to appeal on April 26, 2021 (Resp. Ex. 63, Doc. 15-19 at 11).

Petitioner filed the Petition on May 19, 2021. (*See* Petition; Doc. 3, "Pet. Br."). Respondent filed opposition on June 12, 2021 (Resp. Aff.; Docs. 15, 16), and Petitioner filed reply on September 8, 2022 (Doc. 27). Petitioner also filed a motion to amend the Petition on August 29, 2022. (Doc. 25). Respondent opposed Petitioner's motion to amend on September 15, 2022 (Doc. 28), and Petitioner filed reply on October 4, 2022 (Doc. 28). Judge Krause, on June 16, 2026, issued the R&R recommending that the Petition and Petitioner's request to amend the Petition be denied.[3] Petitioner filed objections to the R&R on August 27, 2026. (Doc. 37, "Objections"). Respondent filed a response to the Objections that same day, stating that the R&R "should be adopted in its entirety and the petition should be dismissed" for the reasons set forth in the R&R and Respondent's Opposition to the R&R. (Doc. 38).

## STANDARD OF REVIEW

"A district court reviewing a magistrate judge's report and recommendation 'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Antoine v. Warden*, No. 20-CV-05130, 2021 WL 4066654, at *1 (S.D.N.Y. Sept. 7, 2021) (quoting 28 U.S.C. § 636(b)(1)). "The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the

[3] By Order dated June 11, 2021, the Court referred this case to Judge Krause. (Doc. 6).

face of the record." *Olivo v. Graham*, No. 15-CV-09938, 2021 WL 3271833, at *1 (S.D.N.Y. July 30, 2021) (citing *Wilds v. United Parcel Serv., Inc.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)). "[A]ny part of the magistrate judge's recommendation that has been properly objected to must be reviewed by the district judge *de novo*." *Nambiar v. The Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 358 (2d Cir. 2025) (quoting *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010)). An objection is "proper" if it is timely and specific. *Id.* at 359. "A proper objection generally may not raise new arguments not previously made before the magistrate judge." *Id.*

**DISCUSSION**

Petitioner raised seven grounds for relief in the Petition: (1) the evidence at trial was legally insufficient to establish his guilt; (2) prosecutorial misconduct; (3) ineffective assistance of trial counsel for failing to request a *Cardona* hearing; (4) his sentence was excessive and vindictive; (5) ineffective assistance of trial counsel for failing to argue that there was no agreement to establish a conspiracy, and of appellate counsel for failing to argue this point on appeal; (6) ineffective assistance of trial counsel for failing to cross-examine a prosecution witness about his criminal history, and of appellate counsel for failing to argue this point on appeal; and (7) actual innocence. (Petition at 4-11). Judge Krause recommended that the Petition be denied in full. (*See* Report). Petitioner lodges nineteen objections to the R&R. (*See* Objections).

In deciding a petition for writ of habeas corpus seeking relief from a decision of a state court, "a federal court cannot disturb a state court's decision on a case or issue that rests on an independent and adequate state ground." *Murray v. Noeth*, No. 21-CV-05343, 2024 WL 4350913, at *10 (S.D.N.Y. Sept. 30, 2024). "When a state court has decided a case on an independent and adequate state ground—whether substantive or procedural—[federal courts] decline to review the

state court's decision." *Garraway v. Phillips*, 591 F.3d 72, 75 (2d Cir. 2010). Claims that are decided based on independent and adequate state grounds are subject to a procedural bar. *Id.*

If, however, a habeas petitioner's claim is adjudicated on the merits, federal courts apply "the deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 ('AEDPA')" to the petitioner's claims. *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006). "Applying AEDPA deference, a federal court may grant a writ of habeas corpus if the state court's adjudication on the merits 'was contrary to, or involved an unreasonable application of, clearly established, Federal law as determined by the Supreme Court of the United States." *Id.* (quoting 28 U.S.C. § 2254(d)(1)). A decision of a state court is "contrary to" clearly established federal law "if it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law' or if it 'decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'" *Id.* (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000)). For a decision of a state court to be "unreasonable," it must not just be incorrect, but must have "[s]ome increment of incorrectness beyond error." *Id.* at 243 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

A court may also grant a writ of habeas corpus if the adjudication on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). "The state court's factual findings are presumed correct unless rebutted by clear and convincing evidence." *Martinez v. Capra*, 675 F. App'x 46, 47 (2d Cir. 2017) (summary order) (citing 28 U.S.C. § 2254(e)(1)).

## I. Factual Objections

Petitioner makes four factual objections to the R&R. (*See* Objections ¶¶ 1-4). Petitioner contends that the R&R: (1) mischaracterizes the June 14, 2010 incident during which he rammed

his ex-girlfriend's car on Interstate 84, by omitting that there was no damage to Petitioner's car and overstating Ms. Andrews' injuries (*id.* ¶ 1); (2) does not mention that Petitioner attempted suicide (*id.* ¶ 2); (3) omits that Petitioner was "heavily medicated for depression due to [his] suicide attempt" when he sought Mr. Ferrigno's assistance to kill his ex-girlfriend and that he did not in fact "seek out or 'enlist' Mr. Ferrigno" but that Mr. Ferrigno, "a trained informant," sought out Petitioner to "allegedly agree with his 'plan'" (*id.* ¶ 3); and (4) improperly relies on the Respondent's Affirmation in summarizing the facts (*id.* ¶ 4).

"[A] court is not required to recite in its written opinion every fact and argument in the record before it." *Henry v. Wyeth Pharms., Inc.*, No. 05-CV-08106, 2007 WL 4526525, at *6 (S.D.N.Y. Dec. 19, 2007). Here, Petitioner objects to the omission of several purported facts in the Report (Objections ¶¶ 1-3), but Judge Krause was not required to recite every fact in the record. Furthermore, Judge Krause acknowledged Petitioner's argument that there was no damage to his vehicle (*see* Report at 54 & n.31), and the failure to mention this in the factual background section of the R&R was not a "mischaracterization" of the June 14, 2010 incident. The Report also correctly stated that Ms. Andrews suffered "injuries to her teeth and her hand." (*Id.* at 2). Regardless, Judge Krause was not required to recite these facts in the Report, nor was he required to detail Petitioner's suicide attempt or that he was medicated when he confided in Mr. Ferrigno. *See Henry*, 2007 WL 4526525, at *6.

As to Petitioner's objection that Judge Krause improperly relied on Respondent's Affirmation, courts may rely on such affirmations when they are "materially consistent with the record." *See Cruz v. Lee*, No. 12-CV-06119, 2016 WL 11484442, at *1 (S.D.N.Y. May 23, 2016), *adopted by*, 2016 WL 4097098 (S.D.N.Y. Aug. 1, 2016); *see also, e.g.*, *Dorcil v. Warden*, No. 22-CV-04394, 2023 WL 6796296, at *1 n.1 (E.D.N.Y. Oct. 13, 2023) ("The factual background is

gleaned from Respondent's Affidavit in Opposition to Petition for Writ of Habeas Corpus, which in turn attaches the state court record as exhibits."); *Hale v. Lamanna*, No. 18-CV-04920, 2023 WL 6389829, at *1 n.1 (E.D.N.Y. Oct. 2, 2023) ("The facts are drawn from the Respondent's Affirmation Opposing Petition for Writ of Habeas Corpus" which "contain[s] detailed recitations of the facts, supported by citations to the record, including the testimony of the witnesses."). Respondent's Affirmation cites to the record which is attached to Respondent's Opposition to the Petition, is materially consistent with that record, and Petitioner points to no specific factual errors in it. Thus, Judge Krause did not err by relying on Respondent's Affirmation in the Report.

Accordingly, Petitioner's factual objections to the Report (Objections ¶¶ 1-4) are overruled.

II. Insufficiency of the Evidence and Prosecutorial Misconduct

Petitioner's first two grounds for relief in the Petition are that: (1) his attempted assault, intimidating a witness, and conspiracy claims were not supported by sufficient evidence; and (2) prosecutorial misconduct denied him the right to a fair trial. (Petition at 4-5; Pet. Br. at 24-29, 31-34). Judge Krause found that these claims were barred from habeas review. (Report at 16-20). Petitioner admits that "[t]he R&R correctly states that Ground One and Ground Two are precluded from habeas review . . . ." (*See* Objections ¶ 7).

Indeed, Petitioner raised these same arguments on his direct appeal, and the Appellate Division found that Petitioner had not properly preserved these claims under CPL § 470.05[2]. *See DiValentino*, 62 N.Y.S.3d at 488.[4] Thus, these claims were rejected under "independent and adequate state procedural grounds" and the Court is precluded from reviewing them. *See*

[4] CPL § 470.05[2], New York's contemporaneous objection rule "provides that . . . New York appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011).

*Garraway*, 591 F.3d at 75. Petitioner could still "avoid procedural default of an unexhausted claim or a claim decided on an adequate and independent state ground" by showing "'cause' for the default and 'prejudice attributable thereto,'" or demonstrating "that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Thomas v. Kirkpatrick*, No. 18-CV-00051, 2023 WL 5510116, at *12 (S.D.N.Y. Aug. 25, 2023) (quoting *Harris v. Reed*, 489 U.S. 255, 262 (1989)). But Petitioner cannot show cause or a fundamental miscarriage of justice and, thus, cannot avoid procedural default on the first and second grounds raised in the Petition. *See id.*

Petitioner objects that it is "self-contradictory" to find that these grounds are barred from habeas review and then to review them in the context of his ineffective assistance of counsel claims. (Objections ¶ 8). The Court understands Petitioner's confusion, but it is not inconsistent to find that Petitioner's prosecutorial misconduct claim was procedurally barred because the state court decided it on adequate and independent state grounds, and then to examine whether Petitioner's counsel's performance was constitutionally infirm for not objecting to the alleged prosecutorial misconduct.

Petitioner also argues that his case fits into an exception to the general rule that "rulings by the state trial court on evidentiary questions are a matter of state law and pose no constitutional issue." (Objections ¶ 9 (quoting Report at 20 n.5)). "The erroneous admission of evidence rises to a deprivation of due process under the Fourteenth Amendment only if the evidence in question 'was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed in the record without it.'" *Johnson v. Ross*, 955 F.2d 178, 181 (2d Cir. 1992) (quoting *Collins v. Scully*, 755 F.2d 16, 19 (2d Cir. 1985)). However, Petitioner did not raise this argument in his Petition or in his brief in support of his Petition (*see* Petition; Pet. Br.) and, although Judge Krause briefly addresses this argument in a footnote in the Report, this objection

is not proper. *See Nambiar*, 158 F.4th at 359. Moreover, Petitioner does not even explain how he fits into this exception other than a conclusory statement that he "was denied a fair trial under the U.S. Constitution . . . ." (Objections ¶ 9).

Accordingly, the Court adopts in full the R&R's findings that Petitioner's first and second grounds raised in the Petition are procedurally barred from habeas review and overrules Petitioner's corresponding objections.

III. Ineffective Assistance of Trial Counsel

Petitioner argues that his trial counsel was ineffective for not: (1) requesting a *Cardona* hearing; (2) objecting to the prosecutor's alleged misconduct; (3) using peremptory challenges to remove any jurors; (4) objecting to the testimony of Police Officer Robert Pratti; and (5) objecting to hearsay statements from certain witnesses.[5]

Ineffective assistance of counsel claims are evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* standard requires Petitioner to first "show that counsel's performance was deficient," in that it fell below an "objective standard of reasonableness." *Id.* at 687-90. "Second, [Petitioner] must show that the deficient performance prejudiced the defense"; in other words, Petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687, 694. There is a "strong presumption" that counsel's conduct "falls within the wide range of reasonable professional assistance," *id.* at 689, "and it is Petitioner's burden to demonstrate 'that counsel's representation was unreasonable under prevailing

[5] Petitioner only raised that his trial counsel was ineffective for failing to request a *Cardona* hearing in the Petition. Petitioner, in his brief in support of his petition and his direct appeal, however, raised the remaining grounds. (*See* Petition at 6-7; Pet. Br. at 34-36; Resp. Ex. 13, Doc. 15-3 at 51-54). Thus, Judge Krause considered all of these alleged grounds for ineffective assistance of trial counsel, and the Court does so as well.

professional norms and that the challenged action was not sound strategy." *United States v. Yeagley*, No. 08-CR-00707, 2017 WL 76903, at *7 (S.D.N.Y. Jan. 3, 2017) (quoting *Kimmelman v. Morrison*, 411 U.S. 365, 381 (1986)). The Second Circuit and Supreme Court have indicated that "*double deference* is appropriate when evaluating *Strickland* claims governed by § 2254(d)." *Gen. Waiters v. Lee*, 857 F.3d 466, 477 n.20 (2d Cir. 2017) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).

Judge Krause correctly found that Petitioner's trial counsel was not ineffective under the "double deference" standard for ineffective assistance claims under § 2254(d).

1. Failure to Request a *Cardona* Hearing

Petitioner objects to the Report's finding that his trial counsel was not ineffective for failing to request a *Cardona* hearing because the Report refers to Mr. Ferrigno's "alleged" role as a government agent. (Objections ¶ 11; *see also* Report at 24). However, the Court interprets the Report's reference to Mr. Ferrigno as an "alleged" government agent as referring to his role prior to contacting law enforcement. Indeed, the Report later makes this distinction, stating: "Thus, to the extent that Petitioner made inculpatory statements as part of his initial conversations with Ferrigno, Ferrigno was not acting as a government agent *at that time*. And to the extent that Ferrigno elicited from Petitioner any additional inculpatory statements *after Ferrigno had become a government agent*, those later statements were not subject to suppression under *Cardona* . . . because they related to the new crime . . . ." (Report at 26 (emphasis added)). And, as discussed below, there was sufficient evidence that Mr. Ferrigno was not a government agent prior to contacting law enforcement.

Indeed, Mr. Ferrigno testified that he spoke with Petitioner regarding Petitioner's intent to have Ms. Andrews killed *prior* to Mr. Ferrigno ever speaking with law enforcement. (Doc. 16-7 at 87-89). Specifically, Mr. Ferrigno testified:

> [Petitioner] provided me with [Ms. Andrews'] name, a description, her -- The home address, the street, the neighbors, which neighbors are noisy, which neighbors are nosy, when they go to work, when they're home, when the daughter gets driven to school, the garage code, the alarm, that the house does have an alarm and which window doesn't have an alarm on it, that the alarm is not through a service, it's just a regular alarm, where he had his gun, gun safe or gun locker or something like that. Locations of jewelry, locations of things. I mean, he gave the whole layout. There's a whole diagram that was mapped out exactly to what, to the T where everything was supposed to go.

(Doc. 16-7 at 89). Mr. Ferrigno testified that Petitioner told him this prior to Mr. Ferrigno agreeing to cooperate with law enforcement. (*Id.* at 88-89). Mr. Ferrigno's testimony was corroborated by the testimony of New York State Police Investigators Scott Fiordaliso and Leonard Caruso. (*See* Doc. 16-5 at 73-74, 77, 92; Doc. 16-7 at 12, 57). Thus, trial counsel was not ineffective for failing to request a *Cardona* hearing. *See People v. Bell*, 141 N.Y.S.3d 215, 218 (App. Div. 2021) ("The trial testimony demonstrated that the informant relayed defendant's murder confession to the Monroe County District Attorney's office *on the informant's own accord*, without any prior involvement of or encouragement from law enforcement. The informant was therefore not a government agent when defendant confessed to murder . . . ."). Thus, Petitioner's objection that there "was never any proof" that he "provided Ferrigno with information about Andrews, including name and address, and layout of house" prior to Mr. Ferrigno meeting with law enforcement (Objections ¶ 12) is belied by the record.

Accordingly, Petitioner's objections to the R&R's findings that his trial counsel was not ineffective for failing to request a *Cardona* hearing are overruled.

2. Failing to Object to Hearsay Statements and Prosecutorial Misconduct

Petitioner lodges only one objection to the R&R's finding that his trial counsel was not ineffective for failing to object to instances of prosecutorial misconduct and hearsay statements elicited by the prosecutor: that the R&R improperly characterizes his sister, Donna, as a co-conspirator. (Objections ¶ 13). The R&R notes that Petitioner's sister was a co-conspirator in finding that Investigator Fiordaliso's testimony about his telephone conversation with Petitioner's sister was admissible under the hearsay exception for statements of co-conspirators. (Report at 30). Thus, the Court reviews the R&R's finding that Investigator Fiordaliso's testimony about his conversation with Petitioner's sister was admissible under the conspiracy exception to hearsay *de novo*, and the rest of the Report's findings regarding Petitioner's ineffective assistance claim premised on prosecutorial misconduct and failing to object to hearsay statements for clear error.

With respect to the Report's finding that Petitioner's sister, Donna, was a co-conspirator and thus, her hearsay statements were admissible, Petitioner objects to the "characterization of his sister Donna as a 'co-conspirator.'" (Objections ¶ 13). Under New York law, "it is well settled that '[a] conspiracy consists of an agreement to commit an underlying substantive crime . . . , coupled with an overt act committed by one of the conspirators in furtherance of the conspiracy.'" *People v. Washington*, 869 N.E.2d 641, 644 (N.Y. 2007) (alterations in original) (quoting *People v. Caban*, 833 N.E.2d 213, 217 (N.Y. 2005)).[6] "[A]n 'agreement' to murder a victim is effectuated when the coconspirators *accept* the defendant's invitation to kill the victim." *Id.* (citing *Caban*, 833 N.E.2d at 217). "The overt act must be an independent act that tends to carry out the conspiracy, but need not necessarily be the object of the crime." *People v. Ribowsky*, 568 N.E.2d

[6] The underlying substantive crime of Petitioner's conspiracy was to commit murder in the second degree pursuant to N.Y. Penal Law § 125.25(1). (Resp. Ex. 2, Doc. 15-1 at 9). "A person is guilty of murder in the second degree when: (1) With intent to cause the death of another person, he causes the death of such person or of a third person . . . ." N.Y. Penal Law § 125.25(1).

1197, 1202 (N.Y. 1991). Sending "a photograph of the intended victim, a detailed physical description of her, and information concerning her whereabouts to an undercover officer posing as an underworld figure" constitutes an overt act. *People v. Garcia*, 645 N.Y.S.2d 377, 378 (App. Div. 1996).

Here, there was evidence at trial from which it could be found that Donna was indeed a co-conspirator. Namely, Mr. Ferrigno testified that Petitioner told him that he and his sister Donna had a person in Newburgh to kill Ms. Andrews. (*See* Doc. 16-7 at 85 ("[H]e claimed that he had someone in Newburgh with his sister that they were going to have kill his, kill Anne Marie . . . ."). Mr. Ferrigno testified that he spoke to Petitioner on more than one occasion about Petitioner's desire to have Ms. Andrews killed. (*Id.* at 86). And Mr. Ferrigno also testified that Petitioner provided him with a detailed description of Ms. Andrews and her whereabouts. (*Id.* at 89). This is sufficient to establish an "agreement" to kill Ms. Andrews and that Petitioner took an overt act in furtherance of the conspiracy. *See Garcia*, 645 N.Y.S.2d at 378.

Thus, Petitioner's trial counsel was not ineffective for failing to object to the hearsay statements of Investigator Fiordaliso attributed to Petitioner's sister, Donna, as they fell within the well-known exception for statements of co-conspirators.

Furthermore, there was no clear error in the R&R's finding that Petitioner's trial counsel was not ineffective for failing to object to alleged misconduct by the prosecutor during summations. (Report at 31-33). "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding. Instead, . . . the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error." *United States v. Melendez*, 57 F.3d 238, 241 (2d Cir. 1995) (quoting *United States v. Young*, 470 U.S. 1, 11-12 (1985)). "[W]here the

prosecution's summation is appropriate, a failure to object does not constitute ineffective assistance of counsel." *Taylor v. Kirkpatrick*, No. 17-CV-02954, 2018 WL 3785107, at *5 (E.D.N.Y. Aug. 9, 2018) (quoting *Mazique v. Ercole*, No. 06-CV-01723, 2008 WL 2884370, at *9 (E.D.N.Y. July 23, 2008)). "And even if the prosecutor's summation crossed the line at points, 'objections, particularly during a prosecutor's summation, are generally considered strategic in nature and therefore not grounds for claims of ineffectiveness.'" *Id.* (quoting *Persad v. Conway*, No. 05-CV-04199, 2008 WL 268812, at *15 (E.D.N.Y. Jan. 30, 2008)). Here, there is no clear error in Judge Krause's finding that the prosecutor's statements were appropriate as she merely made "fair comments on the evidence presented at trial" and "stat[ed] only that based on the evidence presented, the jury should find that she had carried her burden of proof." (Report at 32-33). Thus, it was not ineffective for Petitioner's trial counsel to not object to the prosecutor's summation.

There is also no clear error in Judge Krause's findings that Petitioner's trial counsel's failure to object to the testimony of Lass, Andrews, and Drs. Hoffman and Smith was not ineffective. Indeed, "[a]n attorney's decision not to object to a witness's testimony is generally considered a strategic decision" which "cannot form the basis of an ineffective assistance of counsel claim . . . ." *May v. Griffin*, No. 17-CV-06319, 2021 WL 5450731, at *27 (S.D.N.Y. Mar. 15, 2021)*, adopted by*, 2021 WL 5450346 (S.D.N.Y. Nov. 19, 2021). Judge Krause correctly noted that Dr. Hoffman's and Dr. Smith's testimony was not hearsay, Andrews' testimony would have fallen into the excited utterance exception to the rule against hearsay, and Petitioner's counsel did in fact object to the testimony of Lass identified by Petitioner. (*See* Report at 29-30). Regardless, much of the testimony was also testified to directly by the declarants. (*See id.* at 30).

Accordingly, Petitioner's objections to the Report's finding that his trial counsel was not ineffective for failing to object to hearsay statements by Investigator Fiordaliso is overruled, and the Court finds no clear error in Judge Krause's other findings regarding hearsay statements and alleged prosecutorial misconduct.

3. Peremptory Challenges

There is also no clear error in Judge Krause's finding that Petitioner's trial counsel's failure to use a peremptory challenge to remove any jurors constituted ineffective assistance of counsel. (*See* Report at 33-34). As noted in the R&R: "Petitioner provides no details whatsoever about what occurred during jury selection, why any particular juror was objectionable, and/or why his trial counsel was supposedly ineffective for failing to exercise peremptory challenges to remove jurors from the panel." (*Id.* at 33). Moreover, Petitioner is mistaken as his trial counsel did indeed use several peremptory challenges to remove jurors. (*See* Doc. 16-3 at 42-48).

4. Testimony of Police Officer Pratti

Nor is there clear error in Judge Krause's finding that trial counsel was not ineffective for failing to object to hearsay testimony by Police Officer Pratti. (See Report 34-35). Decisions whether to object to testimony "fall squarely within the ambit of trial strategy . . . ." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987); *see also Singleton v. Davis*, 308 F. App'x 560, 562 (2d Cir. 2009) (summary order) ("The record demonstrates that counsel's failure to object to the admission of second-hand accounts of the offense—his decision to elicit hearsay in at least one instance—was part of a strategy . . . ."). And there was no prejudice to Petitioner here, as the declarant, Ms. Andrews, also testified to the hearsay statements attributed to her by Police Officer Pratti. (*See* Doc. 16-6 at 65, 97-98).

IV. Excessive and Vindictive Sentence

The Petition asserts a ground for relief that Petitioner's sentence was excessive and the judge sentenced him vindictively. (*See* Petition at 7-8). Because Petitioner objects to the R&R's finding that his sentence was not excessive or vindictive (Objections ¶ 14), the Court reviews this ground *de novo*.

The Report rejected Petitioner's claim that his sentence was excessive and vindictive because: (1) Petitioner did not raise any federal constitutional claims regarding his sentence on direct appeal and, thus, did not exhaust his state court remedies such that they can be considered on this Petition; and (2) Petitioner's sentence was within the range prescribed by state law, which presents no federal constitutional issue. (Report at 37-42). The Court agrees.

Petitioner did challenge his sentence on direct appeal, but never raised any federal constitutional challenge to his sentence. (*See* Resp. Ex. 13, Doc. 15-3 at 54-56). Thus, this claim is unexhausted. *Accord White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("In prior state court proceedings, however, [petitioner] did not claim his sentence deprived him of any federal constitutional right. Thus, [petitioner] failed to exhaust the remedies available in state court, and federal courts need not consider the claim.").

Regardless, Petitioner's sentence was within the range prescribed by state statute, as he admits. (*See* Objections ¶ 14 (stating that "he was sentenced to the maximum sentence as a first time felony offender.")). "When a sentence is in accord with the range established by state statutory law, there is no constitutional issue presented for habeas review." *Williams v. Lee*, No. 14-CV-02981, 2017 WL 4685273, at *16 (S.D.N.Y. Aug. 8, 2017); *see also White*, 969 F.2d at 1383 ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law."). "If the sentence is within statutory limits, a petitioner must show that the state

court's sentencing decision was wholly devoid of discretion or amounted to an arbitrary or capricious abuse of discretion, or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty." *Jones v. Hollins*, 884 F. Supp. 758, 761-62 (W.D.N.Y. 1995). Petitioner argues that his sentence was "arbitrary and capricious," even though he was sentenced within the range prescribed by statute, because he "received a higher sentence for a lesser crime than he pled guilty to the first time." (Objections ¶ 14). The trial court stated that it was sentencing Petitioner to a higher sentence following trial, not because Petitioner went to trial, but because of Petitioner's danger to society and refusal to accept responsibility:

> I'm not going to punish you for going to trial, but I am going to impose a sentence upon you that is a proper sentence based upon everything that's occurred. I am going to impose a sentence upon you, because we need to safeguard society, because sometimes I wonder if you understand reality that's reality, and reality that's in your mind aren't always the exact same thing. You made many self-serving statements. You still refuse to take any responsibility whatsoever in the actions which you committed that morning. You still refuse to take any responsibility whatsoever of when Ferrigno and you got together at the county jail.

(Doc. 16-18 at 19). Thus, even had Petitioner properly exhausted this claim, the trial court was not arbitrary or capricious in sentencing him, but instead provided rational reasons for imposing the sentence that it did. *Accord Herrera v. Artuz*, 171 F. Supp. 2d 146, 151 & n.4 (S.D.N.Y. 2001) (finding "no extraordinary circumstances that warrant petitioner's claim that his sentence is excessive" where "[a]fter the conviction, petitioner still refused to take responsibility for the crime.").

Accordingly, Petitioner's objection to the R&R's findings regarding Petitioner's claim that his sentence was excessive and vindictive is overruled.

V. Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was ineffective for failing to argue that his trial counsel was ineffective for failing to: (1) request a *Cardona* hearing; (2) argue that there was no evidence of an agreement to support the conspiracy charge; and (3) cross-examine a witness about their criminal history. Petitioner also argues that his appellate counsel was ineffective for failing to argue that his sentence was excessive and vindictive.

"While the *Strickland* standard for assessing claims of ineffective assistance, set forth above, was formulated in the context of evaluating the effectiveness of trial counsel, the same standard applies to claims regarding the performance of appellate counsel." *Linnen v. Poole*, 687 F. Supp. 2d 501, 548 (W.D.N.Y. 2010) (first citing *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994); and then citing *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir. 1992)). Under that standard, "counsel has no duty to raise every non-frivolous issue that could be raised." *Lynch v. Dolce*, 789 F.3d 303, 311 (2d Cir. 2015) (citing *Jones v. Barnes*, 463 U.S. 745, 754 (1983)). Thus, "[t]o establish prejudice in the appellate context, a petitioner must show that, had his claim been raised on appeal, there is a reasonable probability that it would have succeeded before the state's highest court." *Id.* (citing *Claudio v. Scully*, 982 F.2d 798, 805 (2d Cir. 1992)).

Petitioner objects to Judge Krause's finding regarding appellate counsel's failure to argue that trial counsel was ineffective for failing to argue that there was no evidence to prove a conspiracy. (Objections ¶¶ 6, 10, 15-17). Thus, the Court reviews this claim *de novo*.

Petitioner argues in his Objections that, although appellate counsel argued that the evidence was legally insufficient to support a conspiracy charge, the additional argument that trial counsel was ineffective for failing to so argue would have "strengthened his argument that the evidence was legally insufficient." (*Id.* ¶ 15). Petitioner also argues that there is no evidence of an agreement,

and that there are no documents, only testimony, that could show the existence of an agreement. (*Id.* ¶¶ 16-17).

"A state court directly reviewing a jury verdict of guilty must, consistent with United States Supreme Court precedent, view the evidence in the light most favorable to the prosecution and must not uphold a challenge to the sufficiency of the evidence if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Santone v. Fischer*, 689 F.3d 138, 148 (2d Cir. 2012) (citation modified). Moreover, a "federal court in a habeas proceeding 'may not . . . overturn[]' the 'state-court decision rejecting a sufficiency challenged . . . unless the 'decision was objectively unreasonable.'" *Id.* (quoting *Parker v. Matthews*, 567 U.S. 37, 43 (2012)). Thus, insufficiency of the evidence challenges are reviewed under a "twice-deferential standard." *Parker*, 567 U.S. at 43.

The Appellate Division stated: "viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt of those crimes beyond a reasonable doubt." *DiValentino*, 62 N.Y.S.3d at 488 (citation omitted). And as discussed above, there was sufficient evidence from which a jury could find Petitioner was guilty of conspiracy in the second degree.[7] Certainly, the Appellate Division's decision was not "objectively unreasonable." *Santone*, 689 F.3d at 148.

Because the Appellate Division rejected Petitioner's legal sufficiency challenge to his conspiracy conviction, Petitioner cannot show that his appellate counsel was ineffective failing to argue that his trial counsel was ineffective for not making this argument. Petitioner cannot show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court also finds no merit

[7] *See supra* Section III.2.

to Petitioner's contention that his appellate counsel's sufficiency of the evidence argument would be bolstered by arguing that Petitioner's trial counsel was ineffective for failing to raise this argument. (*See* Objections ¶ 15). And Mr. Ferrigno's testimony alone was sufficient evidence from which a jury could find that Petitioner was guilty of conspiracy. *See United States v. Mack*, No. 18-CR-834, 2020 WL 114509, at *4 (S.D.N.Y. Jan. 10, 2020) ("This testimony alone gave the jury a solid basis on which to find that [the defendant] had participated in a conspiracy . . . .").

Petitioner also objects to the R&R's finding that this claim was only presented in the context of ineffective assistance of appellate counsel, and not as a separate ineffective assistance of trial counsel claim. (*See* Objections ¶ 6). Indeed, Petitioner only cited the arguments raised in his second *coram nobis* petition in support of this claim (*see* Petition at 8-9), and Petitioner raised this claim only in the context of appellate counsel's effectiveness in his second *coram nobis* petition (*see* Resp. Ex. 46, Doc. 15-7 at 2-72). Thus, Judge Krause properly considered this claim only in the context of appellate counsel's ineffectiveness.

Finally, Petitioner objects that "[i]n order to examine the effectiveness of Appellate Counsel, the claim raised—i.e. whether or not trial counsel was ineffective—must be examined fully." (Objections ¶ 10). However, as stated above, while both ineffective assistance of trial counsel and ineffective assistance of appellate counsel claims are analyzed under *Strickland*, *see Linnen*, 687 F. Supp. 2d at 548, the appropriate question when gauging the effectiveness of appellate counsel is whether "there is a reasonable probability that [a claim] would have succeeded before the state's highest court." *Lynch*, 789 F.3d at 311. Judge Krause correctly analyzed Petitioner's ineffective assistance of appellate counsel claims under that standard and found no such probability.

Accordingly, Petitioner's objections regarding his appellate counsel's failure to argue that his trial counsel was ineffective for failing to argue the lack of a conspiracy are overruled.

Petitioner also appears to object to the Report's finding that his appellate counsel was ineffective for not arguing that his trial counsel was ineffective for not cross-examining a witness to the June 14, 2010 incident, Shedrick Hamilton, about his criminal history. However, Petitioner does not actually object to the R&R's conclusion that his appellate counsel was ineffective for not making this argument, but instead argues that Mr. Hamilton's testimony was inconsistent with other witnesses' testimony, because he testified that Petitioner "hit the rear passenger side of Andrews' car." (Objections ¶ 18 (quoting Report at 53)). Petitioner did not raise this argument in his Petition (*See* Petition; Pet. Br.) and this objection is therefore improper. *See Nambiar*, 158 F.4th at 359.

The Court also finds no clear error in Judge Krause's findings that Petitioner's appellate counsel was not ineffective for failing to argue that Petitioner's trial counsel was ineffective for not: (1) requesting a *Cardona* hearing; (2) cross-examining Mr. Hamilton about his criminal history; or (3) arguing that his sentence was excessive or vindictive. As Judge Krause correctly noted, "counsel has no duty to raise every non-frivolous issue that could be raised." *Lynch,* 789 F.3d at 311 (citing *Jones*, 463 U.S. at 754). Furthermore, appellate counsel did in fact challenge Petitioner's sentence on appeal and argue that trial counsel was ineffective for failing to request a *Cardona* hearing. (*See* Resp. Ex. 13, Doc. 15-3 at 53-56). The Appellate Division rejected these arguments. *See DiValentino*, 62 N.Y.S.3d at 488. Thus, Petitioner's appellate counsel either did in fact raise the grounds Petitioner contends they should have raised on appeal, or was not ineffective for failing to do so.

Accordingly, the Court adopts in full the R&R's findings regarding Petitioner's ineffective assistance of appellate counsel claims.

VI. Actual Innocence

Petitioner asserts in the Petition that he is actually innocent. (Petition at 11). Petitioner does not object to the Report's finding that he has not met the "heav[y] burden of proof in order to prove a freestanding claim of actual innocence, and he has not even attempted to do so." (Report at 56; *see also* Objections). The Court finds no clear error in the Report's recommendation regarding Petitioner's actual innocence claim.

"[T]he degree of proof required to make out a freestanding claim of actual innocence (assuming such claim is cognizable on habeas corpus even in a noncapital case) exceeds the proof required to establish gateway innocence." *Jimenez v. Stanford*, 96 F.4th 164, 188 (2d Cir. 2024) (citing *House v. Bell*, 547 U.S. 518, 554-55 (2006)). Here, Petitioner has failed to present new evidence such that "no reasonable juror would find him guilty beyond a reasonable doubt . . . ." *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quoting *House*, 547 U.S. at 538). Petitioner has thus not even established gateway innocence and therefore cannot meet the higher burden of establishing a freestanding claim of actual innocence.

Accordingly, the Court adopts the R&R's recommendation that Petitioner's freestanding claim of actual innocence be denied.

VII. Remaining Objection

Petitioner asserts one remaining objection, that his second § 440.10 motion "requires judicial examination" because it "was filed by a law clerk on [his] behalf" and Petitioner "had no idea about 440 Motions." (Objections ¶ 5). However, this objection is not proper because it was not raised by Petitioner before Judge Krause. *See Nambiar*, 158 F.4th at 359. Accordingly, the

Court declines to consider this new argument raised for the first time in Petitioner's objections. *See Kennedy v. Trs. Of the Testmentary*, No. 08-CV-08889, 2026 WL 2949415, at *2 (S.D.N.Y. Sept. 30, 2026) ("[A] district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.").

VIII. Leave to Amend

Petitioner objects to the R&R's recommendation that he be denied leave to amend the Petition. (Objections ¶ 19). Thus, the Court reviews Judge Krause's recommendation regarding leave to amend *de novo*.

"[U]nder Federal Rule of Civil Procedure 15(a), leave to amend a habeas petition should be 'freely give[n] . . . when justice requires." *Morris v. Bennett*, No. 23-CV-03762, 2023 WL 8435931, at *2 (E.D.N.Y. Dec. 5, 2023). However, "leave is properly denied 'where amendment would be futile.'" *Id.* (quoting *Reyes v. LaValley*, No. 10-CV-02524, 2013 WL 4852313, at *6 (E.D.N.Y. Sept. 10, 2013)). Under the AEDPA, "a state prisoner must generally exhaust challenges to their conviction in state court before pursuing federal habeas relief based on those claims." *Id.* (citing 28 U.S.C. § 2254(c)). "As a result, it is generally futile to amend a habeas petition to add an unexhausted claim . . . ." *Id.*

Petitioner's motion to amend seeks to add an ineffective assistance of counsel claim asserted in his third § 440.10 motion. (*See* Doc. 25). However, Petitioner's claim is untimely as it is brought after the AEDPA's one-year statute of limitations. *See Tineo-Santos v. Piccolo*, No. 19-CV-05038, 2021 WL 266561, at *3 (S.D.N.Y. Jan. 27, 2021) ("The AEDPA imposes a one-year statute of limitations on habeas corpus petitions, effective generally on the date on which the

judgment became final by the conclusion of direct review or expiration of the time for seeking such review." (citation modified)).

Petitioner argues that Judge Krause erred by not considering whether his proposed amendment relates back to the Petition. (Objections ¶ 19). However, as Judge Krause correctly noted, even if the proposed amendment related back to the Petition, Petitioner's proposed amendment is procedurally barred and, thus, futile. *See Tineo-Santos*, 2021 WL 266561, at *4 ("A motion to amend will be denied as futile where petitioner's claims are procedurally barred."). Indeed, the County Court denied Petitioner's third § 440.10 motion because, under CPL § 440.10(3)(c), Petitioner was previously "in a position adequately to raise the ground or issue underlying the present motion but did not do so." (Doc. 25-4 at 5). Thus, Petitioner's proposed new claim is procedurally barred and amendment would be futile. *See Miller v. LeClair*, No. 20-CV-01546, 2024 WL 1797341, at *7 (E.D.N.Y. Apr. 25, 2024) ("The Second Circuit has recognized New York's application of C.P.L. § 440.10(3)(c) as an adequate and independent state procedural bar.").

Accordingly, Judge Krause properly denied Petitioner's motion to amend as futile.

IX. <u>Certificate of Appealability</u>

A certificate of appealability may issue if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, for the reasons discussed above and in the Report, Petitioner has failed to make this showing. Accordingly, no certificate of appealability shall issue.

**<u>CONCLUSION</u>**

Petitioner's Objections to the Report are overruled, and the Court adopts the Report in its entirety.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: White Plains, New York
October 8, 2026

PHILIP M. HALPERN
United States District Judge